FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ NOV 19 2010 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X   ECF CASE

JOHN RICCIARDI, CALIXTO GARCÍA,
JESUS RODRIGUEZ, MILTON AYALA,        Civil Action No.
PORFIRIO ARRIOLA, CALIXTO PERLERA
and JOSÉ ROBERTO VÁSQUEZ,             CV10-5371

              Plaintiffs,

    v.                                    SEYBERT J

THE KIMCO CORPORATION, KIMCO
FACILITIES SERVICES CORPORATION,      LINDSAY, M.J.
KIMCO DELAWARE, INC., EUREST SERVICES,
INC. and COMPASS GROUP USA INC.,

              Defendants.
-----------------------------------------------------------------X

## PRELIMINARY STATEMENT

1.    Plaintiffs were employed by Defendants as laborers and managers and bring this action for wage violations, including denial of minimum wage, denial of overtime pay and other benefits pursuant to the Fair Labor Standards Act ("FLSA") §§ 7, 15, 29 U.S.C. §§ 207, 215, *et seq.*, and the New York Labor Law ("State Labor Law") §§ 190 and 215, *et seq.*

2.    Plaintiffs also bring this action for unlawful discharge in retaliation for complaining of their unpaid wages in violation of the FLSA and the State Labor Law.

3.    Finally, Plaintiffs assert claims for quantum meruit and unjust enrichment.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over the claims presented in this complaint pursuant to 28 U.S.C. § 1331, 1337, 1343 and 1367 and the FLSA section 16, as amended, 29 U.S.C. §§ 216 (b).

5. Plaintiffs invoke the supplemental jurisdiction of this Court to hear and decide their claims arising under state law, including under the State Labor Law.

6. Venue lies in the Eastern District of New York pursuant to 28 U.S.C. 1391 as the actions and/or omissions that gave rise to this lawsuit occurred in this district.

## PARTIES

7. All of the named Plaintiffs in this action are residents of the State of New York, with the exception of John Ricciardi and Calixto Perlera who both reside in New Jersey.

8. At all times relevant times, Plaintiffs were employed by Defendants to mostly perform work within this district.

9. Defendants THE KIMCO CORPORATION, KIMCO FACILITIES SERVICES CORPORATION and KIMCO DELAWARE, INC. (collectively "KIMCO") are commonly owned and managed foreign business corporations registered within the State of New York and doing business in the State of New York and within this district.

10. KIMCO is in the business of providing janitorial and cleaning services to municipalities and private businesses within this district.

11. KIMCO employs approximately 5500 employees throughout the United States, including approximately 200 employees in New York.

12. At all relevant times, KIMCO was engaged in interstate commerce with an annual revenue exceeding $60 million.

13. Defendant COMPASS GROUP USA, INC. ("COMPASS") is a conglomerate employing in excess of 180,000 employees in the business of, amongst other things, providing catering and dining services to corporate clients, educational and healthcare facilities and sports and entertainment venues through a number of subsidiaries.

14. COMPASS is a foreign business corporation doing business throughout New York State, including in this district.

15. On or about January 6, 2009, COMPASS acquired KIMCO and thus, upon information and belief, KIMCO is a wholly owned subsidiary of COMPASS and subject to the same ownership and management structure.

16. EUREST SERVICES, INC. ("EUREST") is a foreign corporation and a wholly owned division of COMPASS doing business within the State of New York and in this district in the areas of cleaning and janitorial services.

17. At all relevant times herein, KIMCO, COMPASS and EUREST (collectively "Defendants") were Plaintiffs' employers.

## STATEMENT OF FACTS

18. Calixto Perlera ("Perlera") started working for KIMCO as a field supervisor on September 10, 2009.

19. Porfirio Arriola ("Arriola") started working for KIMCO as a laborer in or around October 2009.

20. Jesus Rodriguez ("Rodriguez") started working for KIMCO as a laborer on October 12, 2009.

21. José Roberto Vásquez ("Vásquez") started working for KIMCO as a laborer and technician on October 12, 2009.

22. Calixto García ("García") started working for KIMCO as a laborer on October 12, 2009.

23. Arriola, Rodriguez, Vásquez, Perlera and García were all hourly employees who earned between $9.00 to $15.00 an hour.

24. Arriola, Rodriguez, Vásquez, Perlera and García all reported directly to Plaintiff Milton Ayala ("Ayala").

25. Ayala started working for KIMCO as an Area Manager on October 12, 2009.

26. Ayala initially reported to Sara Vargas, KIMCO's Project Account Manager.

27. After Ms. Vargas' departure from the company, Ayala reported to Plaintiff John Ricciardi ("Ricciardi").

28. Ricciardi was hired by KIMCO as its Regional Manager on November 18, 2009.

29. Throughout their employment, Defendants intentionally underpaid García, Rodriguez, Arriola, Perlera and Vásquez their wages, which prompted them to lodge numerous complaints with Defendants and their supervisors but to no avail and Defendants continued to refuse to pay their wages.

30. In addition, Ayala and Ricciardi lodged numerous complaints with Defendants regarding, amongst other things, the underpayment of Plaintiffs' wages and the harsh working conditions generally that they were forced to work under but Defendants refused to remedy those issues.

31. Instead, and as stated below, in retaliation for Plaintiffs' protected activity, Defendants unlawfully terminated their employment.

## FACTS PERTINENT TO PLAINTIFFS RODRIGUEZ, VÁSQUEZ AND GARCÍA

32. Rodriguez, Vásquez and García were all part of a special team that cleaned special disaster sites.

33. Their work schedules varied according to assignment and location but they worked at least 50 hours every week and usually far more since on any given day they were often required to report for work at 6 AM and did not finish their work until 11 PM or until the work was completed.

4

34. From October 12, 2009 until about November 12, 2009, Defendants did not pay Rodriguez, Vásquez and García any wages for their work.

35. Toward the end of October 2009, after not receiving wages, Plaintiffs complained to Ayala about Defendants' failure to pay their wages.

36. In turn, Ayala alerted Defendants to this failure to pay Plaintiffs' wages on many occasions, but Defendants refused to address the issue.

37. To date, despite numerous complaints to KIMCO's upper management and its HR Department, Plaintiffs have yet to be paid any wages for their work in October 2009.

38. In November 2009, Rodriguez and García received their first pay check but it was payment for only 16 hours of work even though they had worked far more hours during that pay period, including overtime hours.

39. Rodriguez and García received a second paycheck in November which accurately reflected the work they performed for the last two weeks of November but did not compensate them for extensive work they had completed in October and the first half of November.

40. To date, Defendants have still not paid Rodriguez and García their wages for October and the first half of November, 2009.

41. In December 2009 and January 2010, Defendants again vastly underpaid Rodriguez and García for their work.

42. As for Vásquez, Defendants paid him only 40 hours a week for the period November, 2009 through January, 2010, but failed to pay him for considerable amount of overtime that Vásquez had worked during that period.

43. In addition to not being paid their wages, and despite Defendants' promises to the contrary, Plaintiffs were not reimbursed for various job-related expenses, such as fuel and tolls.

44. Moreover, Plaintiffs were forced to sleep in the company vehicle when performing jobs in Pennsylvania since Defendants required them to work from 6AM until 12 midnight and refused to pay for lodging.

45. Ultimately, and in order to get proper rest, Plaintiffs would stay periodically in motel rooms and would be forced to pay the cost of doing so as Defendants refused to reimburse them.

46. Rodriguez, García and Vásquez continued to complain to Ayala about Defendants refusal to pay their wages, including their extensive unpaid overtime.

47. As stated below, Defendants retaliated against them for this protected activity by discharging them.

## FACTS GERMANE TO PLAINTIFF PERLERA'S CLAIMS

48. Perlera was hired as a supervisor for Defendants on or about September 10, 2009.

49. Perlera was paid $13.00 per hour and was responsible for overseeing the cleaning of various banks.

50. Throughout his employment, Perlera often worked more than 40 hours a week, as shown on time sheets provided to Defendants, yet Defendants only paid him for 40 hours of work and refused to pay him for his overtime hours.

51. During his employment, and despite promising to do so, Defendants refused to reimburse Perlera for money he spent on gasoline while driving to each job site.

52. Perlera had accounted for all gas expenditure by promptly submitting gas receipts as instructed but to no avail.

53. Similarly, when they initially hired him, Defendants required Perlera to use his own cell phone while performing his work yet refused to reimburse him for his cell phone usage despite promising to do so.

54. Perlera submitted his cell phone bills to show his usage for work yet Defendants still inexplicably refused to reimburse him for these work expenses.

55. Ultimately, Defendants provided Perlera with a work cell phone to perform his work.

56. Perlera complained various times to his supervisor, David Olivia, about Defendants' refusal to pay his full wages, including overtime, and the failure to reimburse his cell phone usage and gas expenditure.

57. In response, Mr. Olivia would claim there was nothing that he could do and that Defendants did not pay its employees overtime.

58. Perlera worked for Defendants from the beginning of September 2009 through the beginning of December 2009 and complained throughout his employment about Defendants' refusal to pay his overtime wages and refund his expenses.

59. In or about November 2009, Perlera complained to Gus Lopez, Vice President of Human Resources, about the failure to pay his overtime wages.

60. Mr. Lopez told Perlera that he needed to be patient but claimed that Defendants would pay him for his overtime hours.

61. During the last week of his employment, Perlera also complained to Victor Diaz, Defendants' Project Manager, who again claimed that Defendants would pay him promptly for all of his unpaid overtime hours.

62. In fact, Defendants refused to pay Perlera his overtime hours, and on or about December 10, 2009, Olivia asked Perlera to return his work cell phone to him.

63. Perlera knew that returning his cell phone meant that Defendants were terminating his employment and in fact Defendants never called Perlera again to work.

64. To date, Perlera has never received any overtime compensation from Defendants and they have refused to reimburse him for his cell phone usage and gas expenditure.

65. Despite reasonable efforts, Perlera has not been able to find alternative employment since Defendants unlawfully terminated his employment except for one temporary job during February 2010.

### FACTS PERTINENT TO PLAINTIFF ARRIOLA'S CLAIMS

66. As stated above, in October 2009, Defendants hired Arriola as a laborer.

67. Arriola was hired to clean a large Home Depot retail outlet located in Jamaica, Queens.

68. Arriola usually worked 42-43 hours a week as shown on time sheets provided to Defendants, yet Defendants only paid Arriola 40 hours per week.

69. Arriola worked for Defendants from October 2009 to approximately December 20, 2009.

70. Arriola was not paid any wages for the last month he worked for Defendants despite continuing to work in excess of 40 hours per week.

71. Defendants assured Arriola that he would be paid his wages but, to date, Defendants have refused to do so.

72. Arriola was fired on or about December 20, 2009 in retaliation for his complaints.

73. To date, despite diligent efforts to find employment, Arriola has not been unable to find a job.

### PLAINTIFFS JONH RICCCIARDI AND MILTON AYALA'S COMPLAINTS TO MANAGEMENT REGARDING DEFENDANTS' UNLAWFUL REFUSAL TO PAY WAGES

74. Beginning in October 2009, Ayala complained to Vargas that García, Rodriguez, Arriola, and Vásquez were not being paid their full wages and/or overtime pay.

75. Vargas raised the issue of non-payment with Defendants' management on numerous occasions but to no avail.

76. On November 23, 2010, Ricciardi became Ayala's supervisor after Vargas resigned.

77. At this time, Ayala informed Ricciardi that Defendants had been refusing to pay Plaintiffs their wages, including overtime pay.

78. In turn, Ricciardi advised his managers of these unpaid wages.

79. Throughout their employment, Ricciardi and Ayala continued to complain to Defendants' management about the nonpayment of wages in person, via email and by telephone.

80. Ayala and Ricciardi also sent various text messages to management about the nonpayment of wages.

81. On November 23, 2009, Ricciardi had a meeting with Kathy Pinto ("Pinto"), Defendants' Project Manager, to discuss Defendants' failure to pay the project workers their proper wages.

82. In response, Pinto assured Ayala and Ricciardi that Plaintiffs would be paid for all of their work to date.

83. Despite management's assurances, Defendants continued to refuse to pay Plaintiffs and others their proper wages while continuing to force them to work extensive overtime hours under harsh conditions.

84. For example, Defendants continued to require Plaintiffs to drive extensive hours to each job site, sometimes as far afield as Pennsylvania, and work 16-17 hour days, yet refused to provide them with sleeping accommodation.

85. As a result, some Plaintiffs were required to sleep in their vehicles while performing cleaning projects.

86. On December 4, 2009, Ricciardi again inquired with management about the unpaid wages by sending an email to Margarita García ("Ms. García"), Defendants' Assistant Project Manager.

87. In his email to Ms. García, Ricciardi stated, "When I started on Monday Nov. 23 at R&F with project workers they were very unhappy about not getting paid for hours worked. The following is what they claim: Jesus Rodriguez 240 Calixto García 240. They were paid on last pay each 80 hrs so they still have each 160 hours they claim to be owed." [sic]

88. On December 4, 2009, Ricciardi again spoke to Pinto about Defendants' refusal to pay the workers their wages.

89. Pinto requested from Ricciardi additional information about the unpaid wages.

90. Ricciardi supplied the information in an email as follows, "Store construction clean –up for R &F 66th and Broadway, NY city: "Nov. 23 Thru Nov 30 Jesus Rodriguez 27 hours Calixto García 27 hours José Arias 42 hours Miguel April 16 hours Roberto Vásquez 2 hours. Please advise on how to have this sent to payroll for them to be paid for these hours."

91. Ricciardi sent numerous follow up emails with increasing urgency but Defendants refused to pay Plaintiffs' their proper wages and overtime pay.

92. On December 8, 2009, Ricciardi sent another email to Ms. Pinto detailing the hours for which the workers were never paid but to no avail.

93. On December 11, 14th and 15th, 2009, respectively, Ricciardi spoke to Mr. Krawiec, KIMCO's Human Resources Manager, and Michelle Denic ("Denic"), COMPASS's National Recruiter, who claimed that the failure to pay Plaintiffs their wages was due to payroll "problems" occurring nationwide on all new account areas.

94. On December 17, 2009, Ricciardi spoke on three separate occasions to Gus Lopez ("Lopez"), COMPASS's Senior Human Resource Consultant, about Plaintiffs' wagse.

95. Lopez assured Ricciardi that the "payroll issues" would be addressed.

96. On December 17, 2009 Ricciardi again spoke with Denic about the unpaid wages.

97. During this phone conversation, Ricciardi informed Denic that Defendants ongoing refusal to pay Plaintiffs' wages was "intolerable" and needed to be addressed "immediately."

98. On December 20, 2009, Ricciardi sent an email to John Barrett ("Barrett"), CEO of KIMCO, and to Lopez and Denic, bemoaning the nonpayment of Plaintiffs' and others' wages.

99. Ricciardi stated, "[d]irecting me to time and time again to reprimand these workers who are, and have been giving the company 150% without pay for up to 250 hours of wages due to them for over six weeks going back not paid correctly, is abusive and just wrong."

100. On December 21, 2009, Ayala and Ricciardi attended a meeting in New York with Lopez and Mazen Rihani ("Rihani"), Defendants' Vice President of Retail Operations, who had flown in from KIMCO's Chicago office.

101. The primary reason for the meeting was to address the nonpayment of wages and overtime.

102. Lopez and Rihani again assured Ayala and Ricciardi that the workers would be promptly paid the wages owed to them.

103. Despite these assurances, and in retaliation for Ricciardi and Ayala's complaints about Pinto's lack of responsiveness about the wages, Pinto sent Ricciardi and Ayala an email, in which she made various unfounded allegations and directed both of them to work on Christmas Eve and Christmas Day.

104. On December 24, 2009, Ayala and Ricciardi received another unwarranted email from Pinto.

105. In response to Pinto's obvious hostility, Ricciardi directed another email to Barrett, Lopez, Denic and Mr. Pragasam, COMPASS USA's HR Director, in which he stated, "I am requesting an immediate meeting with Compass Corp., as the conduct of direction is unfairly directed in a hostile manner now."

106. Subsequently, Lopez and Mazin sent an email to Ricciardi and Ayala apologizing for Pinto's action and retracting her unwarranted and critical email.

107. On December 30, 2010, Vásquez and others went to the New York Division of Human Rights ("SDHR") to complain about Defendants' treatment of them and their refusal to pay their wages and overtime pay.

108. On December 30, 2009, Ricciardi informed Lopez, Barrett and Denic that Vásquez and some other Plaintiffs had filed a complaint with the SDHR.

109. On January 2, 2009, Ricciardi sent two emails to Lopez, Barrett and Denic stating, "[t]he truth is there is little, to no changes on all the many crises issues outlined in my first message dated December 20, 2009 in this hostile unhealthy work place. Advise me, and Northeast Kimco corp. employee team when there will be written spelled out action plan, presented for forward movement to resolve this unstable behavior that to the northeast employees has been felt as abusive, and needs to stop now."

110. On January 4, 2010, in retaliation for his complaints about the unpaid wages, including his January 2, 2010 email, Defendants unlawfully terminated Ricciardi's employment.

111. Ricciardi's work performance had always been excellent throughout his employmen.

112. In fact, prior to complaining about Defendants' refusal to pay Plaintiffs their full wages, Defendants had advised Ricciardi that they intended to promote him.

113. Meanwhile, on or about January 4, 2009, in retaliation for his complaints about the wages and the hostile work environment, Rihani demoted Ayala from the position of Defendants' Area Manager to "Manager's Assistant."

114. This demotion was unwarranted as Ayala's work had always been excellent and Defendants had never raised any work performances issues raised with him.

115. Ultimately, on January 8, 2010, Defendants terminated Ayala's employment.

116. On or about January 6, 2010, Defendants discharged Vásquez, García and Rodriguez in retaliation for their complaints.

117. On or about January 6, 2010, given Defendants' ongoing refusal to pay their wages and what they perceived to be Defendants' discriminatory practices, Vásquez and Rodriguez filed a complaint of race and national origin discrimination with the SDHR.

118. To date, Defendants have obstinately refused to pay Plaintiffs' their full wages, including their overtime pay.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION: FLSA

119. Plaintiffs repeat and reassert all allegations previously set forth.

120. Defendants intentionally refused to pay Plaintiffs García, Rodriguez, Arriola, Perlera and Vásquez their proper wages and overtime wages in violation of the FLSA, 29 U.S.C. §§ 206, 207.

121. At all relevant times, Defendants were aware of the actual hours that Plaintiffs worked since their hours were accurately and contemporaneously recorded and submitted to management on time sheets.

122. Defendants intentionally and willfully refused to pay Plaintiffs their full pay and hence are liable to Plaintiffs for liquidated damages.

123. Plaintiffs have thereby been damaged in an amount as yet underdetermined but at least $100,000.

## SECOND CAUSE OF ACTION: STATE LABOR LAW

124. Plaintiffs repeat and reassert all allegations previously set forth.

125. Defendants intentionally refused to pay Plaintiffs García, Rodriguez, Arriola, Perlera and Vásquez for all their hours worked, refused to pay the statutory overtime rate for hours worked in excess of 40 hours per week and failed to keep proper wage and hours records in violation of Articles 6 & 19, §190, *et seq.* and §650, *et seq.*, of the State Labor Law.

126. At all relevant times, Defendants were aware of the actual hours that Plaintiffs worked since their hours had been recorded and submitted to management.

127. Defendants intentionally and willfully refused to pay Plaintiffs their full pay and hence are liable to Plaintiffs for liquidated damages.

128. Plaintiffs have thereby been damaged in an amount as yet undetermined but at least $100,000.

## THIRD CAUSE OF ACTION: UNJUST ENRICHMENT

129. Plaintiffs repeat and reassert all allegations previously set forth.

130. Defendants have received labor from Plaintiffs García, Rodriguez, Arriola, Perlera and Vásquez, work for which Plaintiffs anticipated they would be properly compensated.

131. Despite knowing of Plaintiffs' reasonable intentions to be compensated in wages and benefits for the labor they were providing to Defendants, Defendants intentionally refused to pay or otherwise provide to Plaintiffs such compensation, and Defendants were thereby unjustly enriched.

132. Plaintiffs have been thereby damaged in an amount as yet undetermined but at least $ 100,000.

## FOURTH CAUSE OF ACTION: QUANTUM MERUIT

133. Plaintiffs and repeat and reallege all allegations previously set forth.

134. Plaintiffs García, Rodriguez, Arriola, Perlera and Vásquez performed all the work required of them to the highest level.

135. While Plaintiffs' services were accepted by Defendants, Defendants did not provide Plaintiffs the reasonable value of their services.

136. Plaintiffs have thereby been damaged in an amount as yet undetermined but exceeding $100,000.

## FIFTH CAUSE OF ACTION: RETALIATION

137. Plaintiffs repeat and reassert all allegations previously set forth.

138. All the Plaintiffs continually complained to Defendants that Plaintiffs García, Rodriguez, Arriola, Perlera and Vásquez were owed wages and/or overtime compensation.

139. In retaliation for these complaints, Defendants terminated Plaintiffs' employment in violation of the FLSA and New York State Labor Law, Section 215.

140. Defendants' unlawful retaliatory conduct was malicious, intentional and performed with the actual intent of harming Plaintiffs.

141. As a result of Defendants' unlawful actions, the Plaintiffs have been damaged in an amount exceeding $350,000.

WHEREFORE, Plaintiffs demand judgment against Defendants for the following relief:

A. Relief sought for each Cause of Action;

B. Injunctive relief;

C. Punitive damages;

D. Liquidated damages;

E. Interest on the unpaid wages;

F. Costs, disbursements and attorneys' fees;

G. Such other and further relief as the Court deems just and proper.

### JURY DEMAND

Plaintiffs demand a trial by jury.

Dated:     New York, New York
           November 15, 2010

LAW OFFICES OF IAN WALLACE, PLLC

By: _____
Ian Wallace (IW:3100)
501 Fifth Avenue, 19th Floor
New York, New York 10017
(212) 661-5306

And By:    L. G.
           _____
Lauren Goldberg (LG:9890)
Law Offices of Lauren Goldberg, PLLC
501 Fifth Avenue, 19th Floor
New York, New York 10017
(646) 452-8380